In re TEXACO, INC., Texaco Capital,
Inc., Texaco Capital, N.V.,
Reorganized Debtors.

TEXACO, INC., Plaintiff,

v.

WOLVERINE EXPLORATION
COMPANY, et al.,
Defendants.

Bankruptcy Nos. 87 B 20142 (ASH)
to 87 B 20144 (ASH).
Adversary No. 96–5113A.

United States Bankruptcy Court,
S.D. New York.

Jan. 16, 1998.

Weil, Gotshal & Manges, L.L.P. by Martin J. Bienenstock, New York City, for Reorganized Debtor/Plaintiff.

Pezold, Richey, Caruso & Barker by R.K. Pezold, Tulsa, OK, Skadden, Arps, Slate, Meagher & Flom, L.L.P. by Michael L. Cook, New York City, of counsel for Defendants.

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Texaco reopened its 1987 Chapter 11 case and commenced this adversary proceeding in May 1996. The complaint seeks declaratory and injunctive relief with respect to claims asserted against Texaco by defendants Wolverine Exploration Company, *et al.* (collectively "Wolverine") which have been litigated to an arbitral award in an arbitration proceeding. The claims here involved concern the pricing of natural gas purchased or required to be purchased by Texaco from Wolverine both pre- and post-Confirmation. It is Texaco's position that Wolverine's pricing claims were not arbitrable under state law because they were discharged, and that the arbitral award of $19,534,042.30 on the pricing claims is void under 11 U.S.C. § 524(a)(1) and paragraph 24 of the Confirmation Order.

Both sides have moved for summary judgment based upon documents and upon the record of the legal proceedings that have occupied the parties for much of the past decade. There is no triable issue of fact, and the dispute before this Court is ripe for determination.

The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157 and the standing order of reference dated July 10, 1984 signed by Acting Chief Judge Robert J. Ward pursuant to 28 U.S.C. § 157(a).

## Background

This dispute arises out of a contract (the "Quasar Contract") dated December 26, 1979 between Texaco and Wolverine's predecessor in interest under which Texaco agreed to take, or pay for if not taken, certain quantities of gas produced by Wolverine in the Powell South Field, Marshall County, Oklahoma.

On March 14, 1988 Wolverine filed proof of claim no. 5449 (the "Proof of Claim") in Texaco's Chapter 11 case. The Proof of Claim covered a "take-or-pay" claim, based upon Texaco's failure to purchase required quantities of gas under the Quasar Contract, and a "well-damage" claim. The well-damage claim is not at issue here. The Proof of Claim framed the take-or-pay claim alternatively if the contract were assumed, or if it were rejected. If the contract were assumed, the Proof of Claim asserted pre-petition contract damages (exclusive of interest) of $8,480,406 and post-petition contract damages through March 15, 1988 of $2,301,949, and if the contract were rejected, pre-petition contract damages of $20,697,164 after discount to present value. Calculation of the dollar amount of the take-or-pay claim obviously was a factor of multiplying price times volume. Neither the price element nor the volume element was specified in the take-or-pay claim.

By order dated March 23, 1988 (the "Confirmation Order"), this Court confirmed Texaco's Second Amended Joint Plan of Reorganization (the "Plan"). Pursuant to Article VI(A) of the Plan, Texaco assumed "all executory contracts or unexpired leases of the Debtors," including the Quasar Contract, not rejected or the subject of a motion to reject.

Texaco moved to expunge the claims asserted in Wolverine's Proof of Claim by "Notice of Hearing and Objection to Allowance of Claim" dated June 15, 1988. The motion did not take issue with the dollar amounts in the Proof of Claim or the price or volume components of the Claim but sought total expungement because "the books and records of the reorganized debtors do not reflect any amount due and owing to the claimant relative to the claim listed above." The motion to expunge was resolved in a stipulation and order (the "Stipulation and Order") so ordered by the Court on November 1, 1988. The Stipulation and Order recited that Wolverine had commenced an action in the Tulsa District Court (the "Pending Action") asserting claims for damages against Texaco based on post-Confirmation events, that Wolverine desired to amend the Pending Action "to assert claims against Texaco that were set forth in the Proof of Claim based upon events that occurred pre-petition and prior to entry of the Confirmation Order," and that Texaco and Wolverine "desire to resolve the [Proof of Claim] and [Texaco's motion to expunge] subject to the terms and conditions set forth below." The parties agreed in the Stipulation and Order that Wolverine's Proof of Claim and Texaco's motion to expunge "shall be resolved and the Claim shall be deemed allowed in such liquidated amount as is determined in the Pending Action outside the bankruptcy court by final order." The Stipulation and Order provided further:

2. Claimant and Texaco represent that the Pending Action will proceed as if no chapter 11 case had been commenced by Texaco.

On January 17, 1989 Wolverine filed a Second Amended Petition in the Pending Action. On February 6, 1989 Texaco commenced an adversary proceeding in this Court seeking a judgment declaring that Wolverine's claim for punitive damages alleged in the Second Amended Petition was discharged and enjoining prosecution of the discharged claim.[1] The adversary proceeding did not allege that any of Wolverine's pricing claims were barred by Texaco's discharge. Instead, a few weeks later Texaco sought to compel arbitration of the pricing claims.

On February 24, 1989 Texaco moved in the Tulsa District Court to dismiss or stay the Pending Action pending arbitration of the Wolverine claims, relying on a clause in the

---

1. It appears that the punitive damage claim was abandoned and the adversary proceeding became moot and was dismissed.

Quasar Contract requiring arbitration of pricing disputes. Texaco argued that Wolverine's claims relating to post-Confirmation gas purchases concerned a pricing dispute which was not before the Bankruptcy Court and was not subject to Bankruptcy Court jurisdiction or the Stipulation and Order. After the motion was denied, in a motion to reconsider Texaco referred to pricing disputes in Wolverine's pre-Confirmation claim as well as its post-Confirmation claims, stating, *inter alia*, "The pre-confirmation take-or-pay claim is actually a dispute between Plaintiffs and Texaco as to the price to be paid by Texaco, if any, for gas not taken during the applicable time period." *See* the quotations in Defendants' Statement of Material Undisputed Facts Under L.B.R. 7056–1 ¶¶ 12–19 and Texaco's Response thereto. Texaco's motion regarding arbitrability was ultimately resolved by the Oklahoma Court of Appeals in December 1991, *Wolverine Exploration Company v. Natural Gas Pipeline Company of America, Inc.*, 842 P.2d 352, 354–55 (Okla.App.1991), *reh'g denied,* June 8, 1992, *cert. denied,* November 17, 1992, which stated:

> All [Wolverine's] claims arising under Article Fourth of the [Quasar Contract] are subject to arbitration, and the arbitrator should consider any dispute regarding any provision relating to "price" in Article Fourth.

During the litigation in the Oklahoma Courts concerning the arbitrability of Wolverine's claims in the Pending Action, Texaco never stated or intimated that any of Wolverine's pre- or post-confirmation pricing claims were not arbitrable under state law because they had been discharged under federal law.

After the Oklahoma Court of Appeals decision granting Texaco's motion for arbitration of Wolverine's claims became final, Wolverine and Texaco entered into a comprehensive Arbitration Agreement. Paragraph 2 of the Arbitration Agreement provided:

> 2. *Matters for Arbitration.* Plaintiffs and Defendant agree to arbitrate under this Agreement all claims existing on the effective date hereof between Plaintiffs, or any of them, and Defendant related to the Powell South Field in Marshall County, Oklahoma. Claims, counterclaims, setoffs, and defenses to be arbitrated shall be raised as described in Section 9 hereof. Claims, counterclaims, setoffs and defenses existing on the effective date hereof which are not raised as described in Section 9 are waived. Once raised, any claim, counterclaim, or setoff not prosecuted to an award will be deemed waived and dismissed with prejudice.

In April 1994 Wolverine served its Statement of Claims in the Arbitration. After a recitation of facts, the Statement of Claims set forth Wolverine's claims in six numbered paragraphs, with paragraph 1 entitled "Breach of Contract" broken down into subparagraphs a–f. Subparagraphs b and c covered the "take-or-pay" claim asserted in the Proof of Claim, which concerned gas which Texaco was required to take under the Quasar Contract but did not. The claim asserted in Subparagraph a of the Statement of Claims concerned gas which Texaco did take delivery of both pre- and post-confirmation but for which Wolverine claimed Texaco paid an incorrect price.

In its Statement of Defense and Counterclaims served in May 1994, Texaco included the following defense based upon its discharge in bankruptcy:

> 35. Claimants' claims and damages are barred by Texaco's discharge in bankruptcy and/or by Claimants' failure to timely assert their claims and damages, including any claims or damages relating to pricing or to Texaco's good faith or to the prudency and adequacy of the Texaco–NGPL settlement or any claims to share therein, in Texaco's Chapter 11 case. In all events, Claimants are limited by the claims and damages they asserted in the Proof of Claim they filed in Texaco's Chapter 11 case.

Texaco also alleged a counterclaim against Wolverine as follows:

### Sixth Cause of Action
### (Prosecution of Claim in Violation of Bankruptcy Discharge)

25. By its Order dated March 23, 1988, the Bankruptcy Court for the United

States District Court for the Southern District of New York confirmed Texaco's Plan of Reorganization thereby discharging any unasserted damage claims by Claimants against Texaco.

26. Notwithstanding said discharge, Claimants continue to prosecute pricing and punitive damage claims against Texaco, all in violation of Texaco's Discharge in Bankruptcy and to Texaco's detriment.

27. As a result Texaco has been damaged in an amount which cannot yet be ascertained but which will be at least equivalent to its costs, expenses and attorney fees in defending the Lawsuit and in defending this Arbitration Proceeding.

WHEREFORE, Texaco prays this Panel to award it damages in excess of $100,-000 and such other and further relief, including prejudgment interest and attorney fees and expenses, as this Panel shall deem just and equitable.

On January 9, 1995, Texaco moved for summary judgment in the Arbitration on its bankruptcy discharge defense. Wolverine responded to Texaco's motion for summary judgment, and Texaco replied. The Arbitration Panel heard oral argument and, on February 23, 1995, issued an "Order Denying Texaco's Motions For Partial Summary Judgment." Texaco then filed a "Request for Clarification" which was denied on March 24, 1995 by the Panel.

The parties thereafter conducted extensive discovery, including with respect to Texaco's bankruptcy discharge defense. In May 1995 the parties submitted trial briefs in which each side addressed the bankruptcy discharge defense. The trial before the Arbitration Panel commenced on June 12 and concluded on June 30, 1995. Both parties presented argument and evidence on the bankruptcy discharge defense. Both parties filed post-hearing briefs, and responding briefs, in which both parties addressed the bankruptcy discharge defense, and both parties addressed the merits of the bankruptcy discharge defense in final closing arguments on July 27, 1995.

The Arbitration Panel issued its award and decision on September 6, 1995 (the "Arbitration Award"). The Arbitration Award contained the following passages relating to the bankruptcy discharge defense at page 10:

Texaco's presentation regarding its affirmative defenses at the hearing was directed to its defenses of commercial impracticability, frustration of purpose, force majeure, bankruptcy discharge and estoppel, statute of limitations, and estoppel.

The Panel has considered each of these claims, defenses and counterclaims.

and at pages 24–26:

### Bankruptcy Defense

Texaco asserts that only Claimants' take-or-pay claim is properly arbitrable because it was the only basis for the proof of claim filed in Texaco's chapter 11 bankruptcy. The plan in that case was confirmed in March 1988. Texaco further argues that any liability to Claimants on the take-or-pay claim is limited to the $10.78 million that Claimants listed in their proof of claim as the amount necessary to cure all pre-petition defaults by Texaco should Texaco choose, as it did, to assume rather than reject the contract.

The arbitration agreement by which this dispute was submitted to the Panel states that "Plaintiffs and Defendant agree to arbitrate under this Agreement all claims existing on the effective date hereof between Plaintiffs, or any of them, and Defendant related to the Powell South Field in Marshall County, Oklahoma." The opinion of the Oklahoma Court of Appeals which precipitated submission of this dispute to arbitration ordered that all claims arising under the pricing article of the AQP/Texaco contract were to be arbitrated. The plain language of the stipulation and order entered by the bankruptcy court transferring the parties' dispute to the state court for determination says that "Claimant and Texaco represent that the Pending Action will proceed as if no chapter 11 case had been commenced by Texaco." The issue thus presented is whether all issues between these parties necessary to resolve their contractual disputes are properly before the Panel, or whether only the claim expressly addressed in the lan-

guage of the proof of claim may be determined, the rest of Claimants' allegations being barred by operation of the bankruptcy discharge.

Claimants' proof of claim begins by stating:

> Claimants have multiple claims against Texaco, Inc., all of which relate to the South Powell gas field in Marshall County, Oklahoma. These claims may be broadly classified in two categories: 1) claims arising directly under the take-or-pay provisions of that certain gas purchase contract dated December 26, 1979. . . . The take-or-pay claim may have pre-petition and post-petition elements.

The proof of claim goes on to assert that the amount accruing pre-petition was $8,480,406.00. The post-petition take-or-pay, however, was admittedly an administrative priority expense not subject to the filing of a proof of claim. Claimants presented as their post-petition take-or-pay damages to the bar date as $2,301,949.20, but went on to state that "[i]f the contract is not rejected and Texaco continues to default on take-or-pay payments, the amount will increase as time goes on."

The proof of claim clearly notifies the bankruptcy court that, even if Texaco assumed the contract and cured its pre-petition defaults, post-petition damages would continue to accrue if Texaco continued to fail to pay according to the terms of the contract for the remainder of the contract term. These amounts would necessarily need to be determined in the future. As is evidenced by the scope of the materials now before the Panel, the contract terms regarding volume and price are not easily ascertainable, are the subject of intense dispute, and must be determined by the Panel in order to correctly resolve the question of how much Texaco really owes AQP for all damages for the entire contract term.

While Texaco's thorough analysis of bankruptcy law is instructive, the Panel finds that the specific language of the bankruptcy court is controlling in this case. The Panel is persuaded that, in the stipula-

tion and order, the bankruptcy court submitted for state court determination the entirety of the parties' liability and damages under the contract, including all damages arising from Texaco's failure to take the proper volumes or pay the proper contract price, and that this question was to be determined completely under state court laws and procedures as though the bankruptcy had never existed.

Following a motion for reconsideration by Texaco, the Arbitration Panel entered an order dated October 26, 1995 which awarded Wolverine $4,799,295 on its take-or-pay claim and $19,534,042, including $7,920,602 in interest, on its pricing claim (the "Amended Award"). This Court assumes that the take-or-pay component of the Amended Award relates to the claims asserted in Subparagraphs b and c of Wolverine's Statement of Claims and that the pricing claim component of the Amended Award relates to Subparagraph a of the Statement of Claims. Although both the Subparagraph a and the Subparagraphs b and c claims involved pricing disputes, henceforth in this decision the Court will refer to the Subparagraph a claim as the "Pricing Claim(s)" and the Subparagraphs b and c claims as the "Take-or-Pay Claim."

On January 26, 1996 Texaco filed a motion with this Court to reopen its Chapter 11 case for the limited purpose of exercising jurisdiction over this Adversary Proceeding. The complaint in the Adversary Proceeding was filed on May 10, 1996.

On February 21, 1996 Wolverine filed a complaint for damages against Texaco with the Oklahoma State Court (the "1996 State Court Action"). The complaint in the 1996 State Court Action alleges in a "First Claim" that "Texaco's actions in attempting to reopen its bankruptcy case so as to collaterally attack the Award of the Arbitration Panel through re-litigating Texaco's bankruptcy defense constitutes a breach of the Arbitration Agreement," and in a "Second Claim" that "Texaco's actions in entering into the Arbitration Agreement with no intent to be bound by the result, or the appeal mechanism set out in the Arbitration Agreement, constitute a fraud upon Plaintiffs." The complaint in

this Adversary Proceeding seeks to enjoin the 1996 State Court Action.

### Findings and Conclusions

For purposes of analysis, Wolverine's claims as determined in the Amended Award may be divided in three—the Take-or-Pay Claim, the Post–Confirmation Pricing Claim and the Pre–Confirmation Pricing Claim. It is this Court's conclusion that none of the three is barred by Texaco's bankruptcy discharge, and that Texaco's claims in this adversary proceeding must be denied on grounds unique to each of the Take-or-Pay and the Post–Confirmation Pricing Claims (points I and II, below), and on common grounds applicable to all three of Wolverine's claims (point III A and B, below).

### I. Take-or-Pay Claim

■ The Take-or-Pay Claim, both pre-Confirmation and post-Confirmation, was asserted in the Proof of Claim. The dollar amounts asserted in the Proof of Claim were necessarily derived by multiplying the contract volumes of gas required to be taken by the contract price or prices required to be paid. Neither the price element nor the volume element was set forth in the Proof of Claim, and neither was required to be set forth. Indeed, Wolverine was not required to place dollar amounts in its Proof of Claim, and amounts pleaded were subject to amendment during the pleadings or even at the close of trial to conform to the evidence, under well-established, liberal rules relating to amendment.

Whether Wolverine or Texaco perceived or should have perceived prior to confirmation that there would be a dispute as to the price component of the calculation of the Take-or-Pay Claim is not relevant. Price was an integral element of the Take-or-Pay Claim, and the assertion of the Take-or-Pay Claim generally in the Proof of Claim precludes any argument that a constituent part of the Claim was discharged by the Confirmation Order or the Bankruptcy Code.

### II. Post–Confirmation Pricing Claim

Texaco asserts that "for Bankruptcy Code purposes, a claim is deemed to 'arise' at the moment when acts giving rise to the alleged liability are performed" (Memorandum 30), citing *Texaco Inc. v. Sanders, et al. (In re Texaco Inc.)*, 182 B.R. 937, 951 (Bankr. S.D.N.Y.1995) and *United States v. Chateaugay Corp. (In re Chateaugay Corp.)*, 112 B.R. 513, 520 (S.D.N.Y.1990), aff'd, 944 F.2d 997 (2d Cir.1991). Texaco then argues that "Wolverine's Pricing Claim is based on the change to market pricing of gas under the Quasar [sic] as a result of the NGPL Settlement and Interim Agreement *in 1987*. Accordingly, the Pricing Claim arose pre-confirmation and was discharged" (*id.*).

■ Texaco is correct that a claim is deemed to arise at the moment when the acts giving rise to the alleged liability are performed. But the acts giving rise to a claim for breach of contract for failure to pay the correct price did not happen, and the cause of action did not arise, until Texaco purchased gas and failed to pay the correct price. There is no basis in logic or law to argue that Wolverine's Post–Confirmation Pricing Claim, based upon gas purchased and taken subsequent to the date of the Confirmation Order, "arose" in 1987 as a consequence of the NGPL Settlement and the Interim Agreement. Under the most elementary principles of contract law, Wolverine's Post–Confirmation Pricing Claims did not arise until the dates post-confirmation when Texaco purchased and took gas and failed to pay the correct contract price. The fact that events occurred in 1987 which presaged or were the predicate for Texaco's payment of the incorrect price cannot change the legal fact that Wolverine's cause of action based upon each post-confirmation purchase of gas at the wrong price did not accrue until each post-confirmation purchase occurred, coupled with Texaco's failure to pay the correct price for that purchase. Prior to confirmation Wolverine could not have asserted a proof of claim covering gas which Texaco might purchase in the weeks and months and years after confirmation, for which Texaco might (or might not) pay an incorrect price, and Texaco's discharge cannot bar a claim which did not accrue and could not have been asserted pre-confirmation.

In short, the premise of Texaco's claim of discharge with respect to Wolverine's Post–Confirmation Pricing Claim is fatally flawed. The Post–Confirmation Pricing Claims did not "arise" prior to confirmation, and they are not barred by Texaco's discharge in bankruptcy. The cases relied upon by Texaco are inapposite because they all involved pre-confirmation claims.

### III.   *The Pre–Confirmation Pricing Claim*

Wolverine's Pre–Confirmation Pricing Claim by definition arose pre-confirmation. It was not asserted in the Proof of Claim (which concerned gas not taken), although it arose under the same contract and involved the same pricing dispute as the Take-or-Pay Claim.

It is Texaco's position that (i) the Pre–Confirmation Pricing Claim constituted an amount required to "cure" a default under 11 U.S.C. § 365(b)(1), (ii) that Texaco made a specific decision to assume the Quasar Contract in reliance on Wolverine's Proof of Claim which did not assert a cure amount for the Pricing Claim, and (iii) that the Pre–Confirmation Pricing Claim is barred by the discharge notwithstanding Texaco's assumption of the Quasar Contract. There is room for debate as to at least two premises in this syllogism.[2] But these issues are rendered moot by the following conclusions.

### A.   *The effect of the Stipulation and Order and subsequent events*

Assuming, *arguendo*, that the Pre–Confirmation Pricing Claim would have been barred if nothing further had happened regarding Wolverine's Proof of Claim, the fact is that subsequent events did affect the Proof of Claim.

There is no dispute that the Proof of Claim was subject to amendment under federal law.[3] Whether this Court would have permitted Wolverine to amend its Proof of Claim to assert its Pre–Confirmation Pricing Claim can never be known, because the parties chose to litigate their dispute in the State Court.[4] The Stipulation and Order provided that Wolverine's Proof of Claim and Texaco's motion to expunge "shall be resolved and the Claim shall be deemed allowed in such liquidated amount as is determined in the Pending Action outside the Bankruptcy Court by final order." In so doing, the parties necessarily agreed to litigate every substantive and procedural aspect of the Proof of Claim in the Pending Action, including the power to amend the Claim. The Proof of Claim and the Pending Action became inextricably merged. Texaco knew that a pricing claim had been asserted by Wolverine in the Pending Action, and the Stipulation and Order recited that Wolverine intended to amend the Pending Action to assert additional claims against Texaco "based upon events that occurred pre-petition and prior to entry of the

---

2.   With regard to premise (ii), Wolverine's Proof of Claim was filed a few days before the confirmation of Texaco's Plan, which had been published long prior thereto and which provided that Texaco would assume *all* its executory contracts except those specifically rejected. It is dubious (at best) that Texaco made a considered judgment to assume the Quasar Contract based on the cure amount in the Proof of Claim during the week before confirmation, or even that Texaco officials knew about the Proof of Claim before confirmation. As to premise (iii), *see* Wolverine's Memorandum in Support of its Motion for Summary Judgment at point IX A at 39–47.

"Amendments to proofs of claim timely filed are to be freely allowed, whether for purposes of particularizing the amount due under a previously-asserted right to payment, or simply to cure technical defects in the original proof of claim. If allowed, of course, the amendment relates back to the filing of the original proof of claim."

3.   *In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir.1992) (internal citation omitted) (also noting that, as a "general rule, amendments intended merely to increase" amounts of claims "grounded" in the "same right to payment" are not considered "new" claims). *See also In re Integrated Resources, Inc.*, 157 B.R. 66, 70–71 (S.D.N.Y.1993) (amendment of a proof of claim is "freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim").

4.   It is difficult to conceive why the Court would not have permitted amendment to assert the same pricing under the same contract to cover modest additional quantities of gas taken during the same time frame as the Take-or-Pay Claim for gas not taken.

Confirmation Order." Nothing in the Stipulation and Order purported to freeze the Proof of Claim in the form originally submitted or deprive Wolverine of the right to amend to include pre-confirmation pricing claims similar to the price dispute under the Take-or-Pay Claim.

To the contrary, by the Stipulation and Order the parties agreed and this Court ordered that "the Pending Action will proceed as if no chapter 11 case had been commenced by Texaco." This provision, drafted by Texaco, is clear and unambiguous if it is construed to mean what it says. If no chapter 11 case had been commenced by Texaco, there is no question that Wolverine could have amended the claim to include pre-confirmation pricing claims, since the pre- and post-confirmation distinction is relevant only in a chapter 11 case. Wolverine did amend its claims, and when the parties litigated one aspect of Wolverine's right to amend under state law, the Arbitrators sustained Wolverine's right to assert pre–1988 pricing claims with relation back to 1988 for statute of limitations purposes.

At Texaco's instance, *all* of the price-related claims asserted or which could be asserted under state law in the Pending Action were litigated in the Arbitration. The Oklahoma Court of Appeals sustained Texaco's position, holding that "the arbitrator should consider any dispute regarding any provision relating to 'price' in Article Fourth." Wolverine and Texaco then entered into the Arbitration Agreement, providing for arbitration of "*all* claims existing on the effective date hereof" between Plaintiffs, or any of them, and Defendant related to the Powell South Field in Marshall County, Oklahoma" (emphasis supplied). The Arbitration then became the Pending Action for purposes of the Stipulation and Order.

To summarize, by the Stipulation and Order Wolverine's Proof of Claim was merged in the Pending Action which, by State Court final order and the Arbitration Agreement, became the Arbitration. Wol-

verine's claims originally asserted in the Proof of Claim and the Pending Action were lawfully and consensually amended in the Pending Action and the Arbitration. Those claims as so amended were fully litigated and liquidated in the Amended Award. In accordance with this Court's order in the Stipulation and Order, those claims as so amended "shall be deemed allowed in such liquidated amount as is determined in the [Arbitration] outside the bankruptcy court by final order." Further, in accordance with paragraph 2 of the Stipulation and Order the Pending Action and, subsequently, the Arbitration must be deemed to have proceeded "as if no chapter 11 case had been commenced by Texaco." The consequence of the unambiguous language of paragraph 2 is to preclude any claim or defense based upon Texaco's chapter 11 discharge, since there could be no discharge "if no chapter 11 case had been commenced."

Thus, Texaco's discharge does not bar any part of the Amended Award for two reasons, both stemming from the Stipulation and Order. First, the Proof of Claim, by its merger in the Pending Action/Arbitration, was perforce amended by the pleading amendments in the Pending Action/Arbitration with relation back to the Proof of Claim. Second, the Stipulation and Order mandated that the Pending Action proceed "as if no chapter 11 case had been commenced," thereby precluding the claim or defense of chapter 11 discharge.

The foregoing, in substance, was the conclusion reached by the Arbitrators. This Court concurs with that conclusion upon the foregoing analysis.

### B. *Collateral estoppel* [5]

Even if this Court did not agree with the Arbitrators' conclusion, the Court nevertheless would decline to review that conclusion by reason of the doctrine of collateral estoppel.

---

5. This Court does not disagree with the authorities and analysis set forth in point IV of Defendant's Memorandum at pages 8–13 concerning the parallel doctrine of res judicata, but is of the view that the doctrine of collateral estoppel (issue preclusion) is the more appropriate vehicle for analysis in this case than the doctrine of res judicata (claim preclusion).

**10**

The doctrine of collateral estoppel applies to arbitration awards, *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989), *Benjamin v. Traffic Executive Ass'n Eastern Railroads*, 869 F.2d 107, 110–11 (2d Cir.1989), *In re Drexel Burnham Lambert Group, Inc.*, 161 B.R. 902, 907 (S.D.N.Y.1993) (Pollack, J.), *Maidman v. O'Brien*, 473 F.Supp. 25 (S.D.N.Y.1979) (Haight, J.), including final, although unconfirmed, arbitration awards. *Wellons*, 869 F.2d at 1169, *In re Drexel Burnham Lambert Group, Inc.*, 161 B.R. at 906–07, *Maidman*, 473 F.Supp. at 27–28, Ian R. Macneil, Richard E. Speidel and Thomas J. Stipanuwich, *Federal Arbitration Law* § 39.6, at 39:65 ("[C]ourts have held repeatedly and authoritatively that confirmation is not required to apply preclusion so long as the award is final under the applicable arbitration rules"). The principles of collateral estoppel apply in the context of bankruptcy court litigation. *Brown v. Felsen*, 442 U.S. 127, 131, 139 n. 10, 99 S.Ct. 2205, 2209, 2213, 60 L.Ed.2d 767 (1979); *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 66 (2d Cir.1986) (a "bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction, absent a showing that the judgment was procured by fraud or collusion"). The Second Circuit in *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995) has set forth four requirements for collateral estoppel, as follows:

> Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment. Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

All four requirements are clearly met in this case. As to (1), Texaco's suggestion that the discharge issues litigated before the Arbitrators were not identical because Section 524(a)(1) was not "triggered" until after the Amended Award is captious at best. The discharge relied upon by Texaco now and before the Arbitrators is the same, and the arguments on both sides of the issue were and are the same before and after the Amended Award. As to (2), there is no question that the bankruptcy discharge asserted in Texaco's affirmative defense and in its counterclaim (both quoted above) was "actually litigated" in the Arbitration, and Texaco does not dispute this. But Texaco does argue that "the federal bankruptcy issues raised in Texaco's Complaint were never 'decided' by the Panel" (Response at 32). To the contrary, it is perfectly clear from the Arbitration Award at pages 10 and 24–26, quoted in full above, that the Arbitrators did consider all of Texaco's arguments on the issue of its bankruptcy discharge, and the Panel necessarily decided those arguments by rejecting them. The Arbitrators' decision was a decision on the merits with respect to all of the arguments by both sides. The fact that the Arbitrators did not find the facts and apply the law as Texaco argued does not mean that the Arbitrators did not decide the issues.

As to requirement (3), Texaco argues that because the Arbitrators "adopted Wolverine's argument ... Texaco clearly did *not* have a 'fair' opportunity to have its discharge defense decided by the Panel" (Response at 32). Similarly, as to (4) Texaco declares that "to the extent the Award determined discharged debt against Texaco it clearly is not 'valid' but is *void*" (*id.*). The doctrine of collateral estoppel is not so easily to be set aside by such "heads I win, tails you lose" argument. The requirement of a "fair" opportunity to litigate (3) and a "valid" final judgment (4) does not depend on Texaco winning. The Arbitration proceeding was not "unfair" because Texaco lost, nor was the Arbitration Award or Amended Award "invalid" or "void" because the discharge defense was rejected.

Texaco had ample opportunity to litigate the discharge issue in this Court in the February 1989 adversary proceeding or thereafter. Instead, it compelled arbitration of all the Pricing Claims, and then it chose to litigate the discharge issues in the Arbitration. The Amended Award is binding on this Court under the doctrine of collateral estoppel. If the Arbitration Award was wrong, Texaco's remedy was to exercise whatever rights it may have had under Oklahoma state law with respect to rehearing or review of the Award.[6]

## IV. *Texaco's Other Contentions*

In point I of its Memorandum in Support of its Motion for Summary Judgment ("Memorandum"), Texaco posits that the Arbitrators interpreted the Stipulation and Order as a reaffirmation agreement and that, as such, the Stipulation and Order is void pursuant to 11 U.S.C. § 524(c). Of course, the Arbitrators did not interpret the Stipulation and Order as a reaffirmation agreement, and Section 524(c) has no relevance here. Section 524(c) applies to "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable." The Stipulation and Order was not an agreement the consideration for which was Texaco's debt to Wolverine (whether dischargeable or not)—the consideration for the Stipulation was the parties' mutual agreement to litigate the Proof of Claim and Texaco's objection to it in the Pending Action outside the Bankruptcy Court. Moreover, the Stipulation and Order was not merely an agreement between the parties—it was an order of this Court. The Stipulation and Order does not remotely resemble the type of agreement contemplated by Section 524(c) nor, for that matter, is Texaco the type of debtor for whose protection Section 524(c) was intended.

In point II of its Memorandum, Texaco argues that Wolverine's Pricing Claim was discharged and, accordingly, that the Amended Award is "void" pursuant to 11 U.S.C. § 524(a)(1). The statute provides: "(a) A

discharge in a case under this title—(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor *with respect to any debt discharged* under section ... 1141" (emphasis supplied). The Arbitrators concluded that Wolverine's Pricing Claims were *not* discharged in their decision at pages 24–26, quoted above. The same conclusion was reached by this Court in points II and III A, above. Since the Pricing Claims were not. a "debt discharged under section ... 1141," Section 524(a)(1) is not applicable.

■ In point III of its Memorandum, Texaco asserts that Wolverine's Pricing Claims are barred by res judicata, collateral estoppel and equitable estoppel. The res judicata and collateral estoppel claims are based upon the Stipulation and Order. Neither doctrine has the slightest applicability to the Stipulation and Order. Nothing was litigated on the merits with respect to the Proof of Claim and nothing was resolved by the Stipulation and Order except that the parties agreed, and were ordered by this Court, to litigate every substantive and procedural aspect. of the Proof of Claim, including the right to amend, in the Pending Action "as if no chapter 11 case had been commenced." Nor is there the slightest ground for Texaco to invoke the doctrine of equitable estoppel. There is nothing inequitable in a party seeking to amend its claims, as evidenced by the liberal rules permitting amendment with relation back in both federal and state jurisdictions. Moreover, every procedural step in the decade-long history of litigation between Texaco and Wolverine was either consensual or court-ordered at Texaco's instance, including repeated amendments of Wolverine's claims culminating with the Arbitration Agreement calling for arbitration of *"all* claims" existing between the parties including the claims asserted in Wolverine's Statement of Claims in the Arbitration. Texaco could have made any objection to any of the amendments to Wolverine's claims at any time it deemed

6. Wolverine also argues, in substance, that Texaco, having sought and obtained a judicial determination that all Pricing Claims were arbitrable, is judicially estopped from now arguing that the

Pricing Claims were not arbitrable because they were discharged. In view of the conclusions set forth in points III A and B, the Court does not reach the judicial estoppel question.

appropriate, and in fact Texaco did file a limitations objection to an amendment in the Arbitration which was litigated and resolved by the Arbitrators.

In point IV of its Memorandum, Texaco asserts that the Amended Award cannot be deemed an "Allowed Claim" payable under Texaco's plan. It argues: "The Plan defines 'Allowed Claim' as a 'claim against [Texaco] to the extent that— ... a proof of claim has been timely filed; and, ... *the claim has been allowed (and only to the extent allowed) by a Final Order*'" (*id.* at 52, emphasis as in the Memorandum.). For the reasons stated in point III A, above, this argument must be rejected. To summarize the conclusion reached in point III A, the Stipulation and Order provided that the Proof of Claim "*shall be deemed allowed* in such liquidated amount as is determined in the Pending Action outside the bankruptcy court by final order" (emphasis supplied). At Texaco's instance, the Pending Action became the Arbitration. The claim as originally asserted in the Proof of Claim and merged in the Pending Action/Arbitration was repeatedly amended and ultimately included not only the original Take-or-Pay Claim but also the post-Confirmation Pricing Claim, the pre-Confirmation Pricing Claim and other claims as well. Texaco never objected to any of the multiple amendments of Wolverine's claims in the Pending Action or the Arbitration, except for its objection during the Arbitration which was litigated and resolved. For the reasons explained in points I and II, above, the Take-or-Pay Claim and the Post-Confirmation Pricing Claim were not barred by the discharge because the former was asserted in the Proof of Claim and the latter arose post-confirmation. It is not open to Texaco to argue at this date, almost a decade after the Stipulation and Order, that the Proof of Claim was frozen in its original form and could not be amended to assert Pre-Confirmation Pricing Claims materially indistinguishable from the pre-confirmation Take-or-Pay Claims, the former involving the price of gas taken and the latter concerning the price of gas not taken under the Quasar Contract. After the Proof of Claim was merged in the Pending Action by the Stipulation and Order, the Proof of Claim as such lost its identity, and the claims which "shall be deemed allowed in such liquidated amount as is determined in the Pending Action" under the Stipulation and Order were the merged claims asserted in the Pending Action as they were amended thereafter in the Arbitration.

## V. *The 1996 State Court Action*

■ This Court declines to grant injunctive relief barring Wolverine from prosecuting its complaint for damages against Texaco in the Oklahoma State Court.

It is true that this Court has the power under 11 U.S.C. § 105(a) to issue any order necessary to carry out the provisions of Title 11 and to enjoin collateral legal proceedings in aid of this Court's jurisdiction (Memorandum 53). But this Court has exercised the jurisdiction invoked in this adversary proceeding, and preclusion of the 1996 State Court Action is unnecessary to carry out the provisions of Title 11.

The 1996 State Court Action asserts claims for breach of contract and fraud arising out of or relating to the Arbitration Agreement. The claims asserted in that action are based solely on state law and implicate no issues or policies respecting federal law or the enforcement of rights under the Bankruptcy Code. Texaco's enforcement of its bankruptcy discharge will not be "chilled" by the 1996 State Court Action because that action challenges Texaco's conduct under state law as a contracting party, not under federal law as a reorganized debtor.

\* \* \*

Counsel for the parties are directed to agree upon a form of order disposing of this adversary proceeding in accordance with this decision, without prejudice to Texaco's right to appeal from the order so prepared.